Good morning, Your Honors. My name is Seth Goldstein, and I'm representing Plaintiff and Appellant Alana Krause. I'd like to reserve a few moments for rebuttal but just make some brief comments about and emphasize some points in our brief and issues raised by the Defendant. The underlying case in this matter is about bringing the child's voice into the courtroom in a family law matter. This appeal really is about the ultimate effect on lawyers in the larger picture, about how they will bring that voice in the courtroom as an advocate. The issue at hand today is whether or not, as a matter of law, the Defendants are entitled to quasi-judicial immunity. We say not. I'm sorry, Your Honor. Excuse me. Could we start the time? Thank you. California is a code state. There is no statute which grants immunity to an attorney under these circumstances. The only precedent that's available is Howard v. Draken. Now, of course, that's about a psychologist, so we believe that that doesn't apply. However, its analysis, I think, can help this Court. The ruling supports our theory of liability. The analysis, in using their logic, would be to look at whether or not the advocate was acting in a judicial role. And we believe that the best test of that is another subset of questions that the Court asked about whether or not the attorney is acting as an advocate or a non-advocate. And I think the statute which appointed the attorney in this case is really dispositive. The words, the operative words of that statute, under actually two of them, the Family Code 3150, state that the attorney will represent the interest, will represent the child. Under Family Code 3151, the ---- Well, that's the best interest of the child. And that is to be distinguished, is it not, from what the child wants? Well, to some degree. And I think there's a ---- I think that the difference and the important factor to look at is you can't look at the best interest as something totally separate and apart from the child. The attorney is responsible for bringing that child's voice and what is important to that child in as an advocate. And I think that's ---- I hope I've addressed the Court's concern there, is that it can't be totally separate and apart. And I think the ---- It's a factor. It is a factor, correct, yes. And the exclusive factor. Not the exclusive factor, right. And under 3151, and I think this brings directly to the Court's point, it says not only is it charged with the responsibility of bringing the best interest, but to present facts. The words are to may introduce and examine witnesses, to present arguments to the Court, to participate to the degree necessary to represent the child adequately. And I think that is precisely what this attorney should have been doing and why ---- and was charged with doing and why there should be liability. These are not neutral terms. These aren't go investigate and bring all facts forward. These are advocate for the client as you would any other person that you were representing in a courtroom. It also is not an issue of special expertise. A minor's attorney doesn't have special training. It's just an attorney brought in to marshal information and to argue for that child's interest. Also, the case very clearly excludes in this particular situation the potential that she was a guardian ad litem. The marriage of Floyd, as Judge White pointed out, excludes that possibility. And the guardian ad litem is really a person who comes into the court representing that interest. At least in the California courts, we have a juvenile court, and this is a distinction that's very important because it comes up in Myers, the case that Howard V. Drapin cites as the reason why attorneys who represent children in child abuse cases should be immune. That's a child protection matter. It's very different than ---- Who appoints the attorney? The attorney would be appointed by the judge. And in California, that can be either by request of any of the parties or by the judge on his own motion or her own motion. So ---- Who pays? And that's another important point here, too. The parents pay. Usually it's split between the two. But the reason that that's significant, I'll come back to in a minute, at a moment later, but the significant point in terms of the guardian ad litem difference is that here, as a guardian ad litem, their responsibility would be to carry forward the general concept of what's best for this child, to make advisement and tell the court what they think, totally separate from their role as an advocate. And what we see is that in the family court, the attorney for the minor actually becomes, in most cases, the person who is garnering, excuse me, garnering information from both sides and their own independent investigation, which they then bring to the court advocating for what is either the most logical or the most protective situation for that child. Now, in the big picture, and this goes to the issue of payment, contrary to an assertion made in both a statement made by the court in Myers, I don't think this is going to be something which will deter attorneys from representing children, primarily because this is a very lucrative appointment. Not only do they get a situation where they can collect from two people, but they also get a judge to enforce their fee requests, and more importantly, parents don't want to disfavor or get disfavor from that attorney. So they will pay and continue to support the attorney. Yes, Your Honor. I was just wondering if this is roughly analogous to an expert witness that might be appointed by a court. Very different in California. The code allows the evidence code under 730 allows for the appointment of an expert who will advise the court, who actually is a court's expert. And that's what's the difference here. If the court were to appoint a custody evaluator, and in fact, that's exactly what Draken is about, is that that psychologist was appointed under the evidence code to advise the court to collect information about the psychological situation between the two parties and then make a recommendation between the two. That's the difference between an expert and the attorney. And that's, I think, the important part, is that the attorney is not an expert. The attorney is just someone who gathers that information from experts to bring the information to the court. Does the attorney gather information from the child and then present it to the court? As well, yes. And, in fact, as the Court may remember in the statute, it specifically says that the child's interests may be represented both independent of the child's wishes or the child's wishes may be brought to the court should the attorney be. But that's not necessarily a privileged conversation. No, it's not. And, in fact, it's one of the reasons why it's accepted, so that the judge can hear what the child wants. And the attorney is an expert, because he's a, you know, he's an attorney. But he's not a witness. I guess that's the distinction, but I'm not sure that that. Expert in the sense that he's an attorney versed in the law, but not necessarily an attorney who has any special expertise in child development, the understanding of dynamics of parent roles and so on. Lastly, we cited the Tiber case as supporting our position both for the fact that this legislature has not made immunity a protection that is afforded, in this case, a public defender. And researching the issue of public defenders, I noticed the case that Judge Canby wrote in Glover v. Tower. I think it's a very similar situation where one of my few Supreme Court affirmances is that there is a public defender in this case. And, as I read, very supportive in this situation, because it is exactly the same kind of situation where an attorney has not afforded the protections unless there was some statute which said so, number one, and number two, that they have a duty to represent their clients zealously. Given those points, what I would ask is that you reverse the lower court and to let Atlanta's voice into the courtroom. Are there any other questions? I appear to be any. Thank you. Thank you. You have a couple of minutes if you want to add anything. I'm going to rebuttal briefly. Thank you. Good morning, Your Honors. Harlan Watkins appearing for appellees Sandra Acevedo, Diamond Bennington, and Symborg. We believe the district court was correct in granting quasi-judicial immunity to Ms. Acevedo and the law firm for a number of reasons. First of all, it's clear from both Family Code 3151 that Ms. Acevedo's role in the custody dispute was to present factual information to the judge who was deciding the dispute. Her role was to garner information both favorable and unfavorable to Elena Krause's desire to remain with her mother, present that information to a court, to the judge, however she would present it, either through witnesses, both lay witnesses or expert witnesses, through documentary evidence, through preparing reports, and to impress upon the judge what all the facts are that determine what the best advocate in the situation. If, for example, Elena has a desire to remain with her mother which is somehow inconsistent with the best interests of the child, then as the attorney appointed by the court, Ms. Acevedo has an obligation, she's duty-bound to report all information, even that that is adverse to Ms. Elena Krause, to the trial judge, so the trial judge can make the appropriate determination about custody. For that reason, we have the Howard case in California which provides for quasi-judicial immunity under such circumstances. Quasi-judicial immunity is necessary for Ms. Acevedo to promote uninhibited and independent decision-making on her part as she fulfills her statutory obligations under Family Code 3151. It protects the attorney when he or she is engaged in the fact-gathering process for the court and in reporting all of the information that an overburdened in making the very important custody determinations that these courts make. The court-appointed attorney must be able to perform his or her job without worry of being intimidated by the litigants, by the child, by fear of later malpractice lawsuits that may occur many years down the line if the minor is dissatisfied with the result. If you have a statute of limitations, it would be extended out to the majority. The burden on the legal profession would be significant. And I would submit that many of the lawyers that accept appointments to represent the best interest of the child under Family Code 3151 would be reluctant to accept those appointments should there be malpractice, at least the potential for malpractice suits, many years down the line. It would create all sorts of mischief with the insurance carriers who cover these lawyers, and it would be expensive for the lawyers to defend these lawsuits many years down the line after witnesses' memories have faded, documents are gone, and time has passed. I think with that, I would submit on the brief unless there are questions from the Court. Any questions? I don't appear to be in. Thank you, counsel. Thank you. Mr. Anderson. One point, Your Honor. The Myers case, which is cited, I think is an important distinction. Myers v. Norris was a child protection matter. The reference to Myers that Howard's court made was that guardians ad litem and attorneys for children in child abuse cases should be protected. And that comes from a horrendous case out of Minnesota, which is very, very different and distinguishable from the case before this Court. If the Court will reflect on the mid-'70s, early-'80s when a scare went across this country about cult-related molestations, that was that case. You have to acknowledge we're following California law. I understand. And I just want to make sure, because I believe that Judge White was confused by those words in terms of attorneys protecting or involved in child protection cases. Again, the statute is clear. In California, there is no immunity, even for dependency matters, which would be what like that case was. And I think that's the important distinction. As far as the legal profession and a burden on the legal profession, unfortunately, family law is probably one of the highest areas of malpractice, insurance, and also in the potential of being sued. So I don't think that's going to change. I think that the fact is that attorneys jump at these opportunities. They are appointed on a routine basis in California to represent children in these cases, and it will not have a negative impact any more than the litigious matters have been to this day where these kinds of contentious facts are brought forward. Again, I'd ask that the Court reverse the lower court. Thank you for the oral argument. Thank you, counsel. The case just argued is submitted for decision. We'll hear the next case, which is Wilk.
judges: Schroeder, Canby, Duffy